Matter of Dunphy (2026 NY Slip Op 01283)

Matter of Dunphy

2026 NY Slip Op 01283

Decided on March 05, 2026

Appellate Division, First Department

Per Curiam 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: March 05, 2026
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Present — Hon. Troy K. Webber
Justice Presiding
David Friedman Bahaati E. Pitt-Burke LlinÉt M. Rosado Kelly O''Neill Levy
Justices.
 Motion Nos. 2025-05537
2025-06667 Case No. 2025-06321
 In the Matter of Timothy Dunphy
A suspended attorney: Attorney Grievance Committee for the First Judicial Department
Petitioner
Timothy Dunphy (OCA Atty. Reg. No. 4017471)
Respondent.

Motion No. 2025-05537, 2025-06667|Case No. 2025-06321|

[*1]In the Matter of Timothy Dunphy, A Suspended Attorney: Attorney Grievance Committee for the First Judicial Department, Petitioner, Timothy Dunphy (OCA Atty. Reg. No. 4017471), Respondent.

Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Timothy Dunphy, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the First Judicial Department on December 17, 2001.

Jorge Dopico, Chief Attorney, Attorney Grievance Committee, New York City (Roy E. Chon, of counsel), for petitioner.
Respondent, pro se.

Per Curiam 

Respondent Timothy Dunphy was admitted to the practice of law in the State of New York by the First Judicial Department on December 17, 2001. Respondent's last registered address was in the First Judicial Department.
On November 17, 2022, this Court suspended respondent from the practice of law, until further order of the Court, as part of a mass suspension proceeding, for failure to file attorney registration statements and pay biennial registration fees in violation of Judiciary Law § 468-a. To date, respondent has not been reinstated and remains suspended in New York.
By July 14, 2025 order, the Connecticut Superior Court for the Judicial District of Waterbury reprimanded respondent for, inter alia, failure to cooperate with Connecticut disciplinary authorities in their random audit of his attorney escrow account.
By motion dated September 25, 2025, the Attorney Grievance Committee (AGC) seeks an order, pursuant to Judiciary Law § 90(2), the Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.13, and the doctrine of reciprocal discipline, finding that respondent has been disciplined by a foreign jurisdiction, directing him to demonstrate why discipline should not be imposed in New York for the misconduct underlying his discipline in Connecticut, and publicly censuring respondent, or, in the alternative, sanctioning respondent as the Court deems just and proper. By December 1, 2025 amended notice of motion, respondent opposes and requests that the AGC's reciprocal discipline motion be dismissed.
In May 2023, the Connecticut Statewide Grievance Committee (CSGC) randomly selected respondent's IOLTA account (i.e., escrow account) for an audit. By May 26, 2023 certified mailing sent to respondent's registered office address, respondent was informed that the audit would be conducted on June 6, 2023 at his office. As part of the audit process, respondent was provided with a questionnaire, which he was directed to complete prior to the scheduled audit. Respondent failed to complete the questionnaire.
On June 1, 2023, the Statewide Bar Counsel's (SBC) office sent respondent an email informing him of the June 6 audit date and requested that he retrieve the
May 26, 2023 certified letter which was confirmed to have been delivered to respondent's local post office. Respondent did not respond to the June 1, 2023 email. On June 5, 2023, an investigator for the SBC contacted respondent by telephone. During the telephone conversation, respondent confirmed his email address to be accurate. The investigator informed respondent that he would be receiving another email from the SBC regarding the audit. Respondent stated that he would reply to the email once received.
On June 7, 2023, the SBC sent another email to respondent requesting that he comply with the previously sent May 26, 2023 letter regarding the random audit. The email also requested that respondent update his registration with the CSGC pursuant to CT Practice Book § 2-27(d) as he had not registered since 2018. Respondent failed to respond to the June 7 email, failed to comply with the random audit, and failed to register with the CSGC. Based on these failures, a grievance complaint was filed against respondent on December 4, 2023.
On December 7, 2023, notice of the complaint was sent by certified mail to respondent at his registered office address. On December 11, 2023, Grievance Panel Counsel for the Danbury Judicial District sent respondent correspondence directing him to file a response to the complaint within 3o days of the date of the letter. On December 22, 2023, the certified mailing sent to respondent on December 7, 2023 was returned as unclaimed and unable to forward. That same day the SBC forwarded a copy of the complaint to respondent's home address by regular mail. The mailing was not returned as undeliverable.
Respondent did not reply to Grievance Panel Counsel's December 11, 2023 letter, nor did he answer the complaint as directed. On March 15, 2024, the assigned Grievance Panel found probable cause that respondent had violated Connecticut Rules of Professional Conduct rules 1.15 (regarding IOLTA accounts, including required bookkeeping records) and 8.1(2) (failure to cooperate with disciplinary authorities). On March 26, 2024, Disciplinary Counsel sent respondent correspondence at his registered office address requesting that he produce various documents. The letter was returned as undeliverable. On May 22, 2024, Disciplinary Counsel emailed the March 26 letter to respondent, but respondent did not produce any documents pursuant to the letter.
On July 2, 2024, Disciplinary Counsel filed Additional Allegations of Misconduct against respondent asserting violations of CT rule 8.1(2) and CT Practice Book §§ 2-27(d) (failure to register annually with the CSGC) and 2-27(e) (failure to cooperate with random audit). A hearing on the allegations was scheduled for September 12, 2024. On August 1, 2024, notice of the hearing was mailed to respondent at his registered office address. On August 15, 2024, the notice was returned as undeliverable on which date the SBC emailed the notice to respondent. On September 10, 2024, respondent sent the SBC a letter with documents that purportedly pertained to the random audit request. On September 11, 2024, respondent filed a motion by email requesting a continuance of scheduled hearing which was granted.
By September 20, 2024 letter, sent in response to respondent's September 10 letter, the SBC advised respondent that the documents he provided pertained to an account that had never been registered with the CSGC and as such was not the account subject to the random audit. The SBC also noted that the address listed in respondent's letter was not the same address he had registered with the CSGC and directed him to update his registration pursuant to CT Practice Book § 2-27(d). The SBC did not receive any further correspondence from respondent.
On December 12, 2024, a hearing convened before a reviewing committee but respondent did not appear. By a March 7, 2025 decision, the reviewing committee found by clear and convincing evidence that respondent had violated CT rule 8.1(2) and CT Practice Book §§ 2-27(d) and 2-27(e) and ordered that respondent be presented to the Connecticut Superior Court for the imposition of whatever discipline it deemed appropriate. On or about April 11, 2025, the Office of Chief Disciplinary Counsel (OCDC) filed the Presentment with the Superior Court.
On or about July 3, 2025, the OCDC and respondent, pro se, entered into a stipulation in which respondent admitted that he violated CT rule 8.1(2) and CT Practice Book §§ 2-27(d) and 2-27(e) as charged in the Presentment; he had registered with the CSGC for 2025; he produced a letter from his bank evincing that the account which had been selected for random audit was closed on March 11, 2020; and the CSGC closed the audit since the account selected was closed before the audit period. As to sanction, the parties agreed that respondent would be reprimanded.
By July 14, 2025 order, the Connecticut Superior Court approved the stipulation and directed that respondent be disciplined in accordance therewith. On July 22, 2025, notice of respondent's reprimand was published in the Connecticut Law Journal.
Respondent did not report his Connecticut discipline to the Court or the AGC as required by 22 NYCRR 1240.13(d). On July 17, 2025, the CSGC notified the Second Department of respondent's discipline "and the matter was transferred to [the AGC] shortly thereafter."
In a proceeding seeking reciprocal discipline, as here, pursuant to 22 NYCRR 1240.13 (b), respondent may raise the following defenses: (1) lack of notice or opportunity to be heard in the foreign jurisdiction constituting a depravation of due process; (2) an infirmity of proof establishing the misconduct; or (3) that the misconduct for which the attorney was disciplined in the foreign jurisdiction does not constitute misconduct in this state (see Matter of Milara, 194 AD3d 108, 110 [1st Dept 2021]).
The AGC maintains that none of the aforementioned defenses apply because "respondent was given proper notice and had ample opportunity to answer the allegations in the Connecticut proceedings," but he "failed to respond to or attend nearly all [the] notices, requests or hearings"; and "[u]ltimately, respondent stipulated to the allegations of misconduct and did not claim any lack of notice or opportunity be heard in the Connecticut proceedings."
Additionally, the AGC maintains that the infirmity of proof defense is inapplicable because, inter alia, "[t]he failures and omissions constituting respondent's misconduct are well-documented in Connecticut Superior Court filings pertaining to the grievance against respondent," which "include respondent's stipulation and admission that he violated the provisions of Connecticut Rules of Professional Conduct and the Connecticut Practice Book which gave rise to respondent's discipline." The AGC further maintains that respondent's misconduct in Connecticut would also constitute misconduct in New York.
As to sanction, the AGC maintains that a public censure is the appropriate reciprocal discipline herein because it is commensurate with the public reprimand imposed in Connecticut and supported by the relevant precedent. Also, the AGC cites as mitigation that "[r]espondent [] ultimately cooperated with Connecticut's disciplinary authorities and admitted his misconduct." As to respondent's failure to comply with 1240.13(d), the AGC maintains that "when balanced with the Court's precedent and mitigating factors, respondent's failure to report his [Connecticut] discipline does not demand a departure from a public censure."
Respondent asserts the 1240.13(b)(3) defense that his misconduct in Connecticut would not constitute misconduct in New York. Respondent also asserts mitigation (1240.13[b]). Specifically, he "did not willfully ignore the CTSG audit requests or the subsequent requests of the Disciplinary Counsel" because he "was plagued and distracted with family health crises throughout 2023 and 2024." Respondent purportedly has not practiced, nor maintained a law office, in Connecticut since April 2014 but he continued to register in that state through 2018; respondent relocated from Connecticut to New York City in 2017 (but concedes that he failed to notify Connecticut of his change of address and thereby thwarted its attempts to notify him of the audit by mail); as noted, respondent received email notifications of the audit at the correct email address; he did submit bank records to the CTSG, albeit for a different account than the one selected for the random audit; and, as noted, he closed the account selected for random audit in March 2020.
Respondent does not assert the defenses enumerated at 124o.13(b)(1) and the AGC correctly argues that none are available to him. First, he was given repeated notice of the allegations against him and opportunity to answer and defend himself at the hearing before the Connecticut review committee for which he failed to appear (notwithstanding his having requested and been granted a continuance of the hearing date); and he chose to admit the misconduct alleged in the Presentment filed with the Connecticut Superior Court and consented to the reprimand issued. In addition, respondent's stipulated admissions to the facts and violations alleged in the Presentment fully support his discipline based thereon.
Furthermore, notwithstanding respondent's assertion of the 1214.13(b)(3) defense, his misconduct in Connecticut would also violate New York's Rules of Professional Conduct (22 NYCRR 1200.0). While respondent maintains that his "matter cannot be categorized as mishandling of funds," his discipline in Connecticut was based on respondent's well-documented failure to cooperate with CSGC's random audit, his failure to cooperate with the resulting disciplinary investigation, and his seven-year failure to register in Connecticut, which implicates New York rules 1.15(i) (requiring that attorneys make the bookkeeping records they are required to maintain available to disciplinary authorities), 1.15(j) (an attorney who fails to maintain required bookkeeping records or fails to produce them when obligated to do so shall be subject to disciplinary proceedings), and 8.4(d) (conduct prejudicial to the administration of justice). Therefore, this Court should impose reciprocal discipline (22 NYCRR 1240.13[c]).
As a general rule this Court defers to the sanction imposed by the jurisdiction in which the charges were originally brought because the foreign jurisdiction has the greatest interest in fashioning sanctions for misconduct (see Matter of Milara, 194 AD3d at 111; Matter of Tabacco, 171 AD3d 163 [1st Dept 2019]; Matter of Blumenthal, 165 AD3d 85 [1st Dept 2018]). Only rarely does this Court depart from the general rule (see Matter of Karambelas, 203 AD3d 75 [1st Dept 2022]; Matter of McHallam, 160 AD3d 89 [1st Dept 2018]).
A public censure is the appropriate reciprocal discipline in this matter as it is commensurate with the public reprimand issued in Connecticut and in general accord with this Court's precedent (see e.g. Matter of Dratch, — AD3d &mdash, 2025 NY Slip Op 05463 [1st Dept 2025]; Matter of Cook, 168 AD3d 108 [1st Dept 2019]).
Accordingly, the AGC's motion should be granted, respondent's motion should be denied, and respondent publicly censured.
All concur.
Wherefore, it is Ordered that the motion by the Attorney Grievance Committee for the First Judicial Department for reciprocal discipline, pursuant to 22 NYCRR 1240.13 and Judiciary Law § 90(2), is granted, and respondent, Timothy Dunphy, is publicly censured; and,
It is further Ordered that respondent's motion is denied.
Entered: March 05, 2026